UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
DOUGLAS B. STEPHENS,                                  **MEMORANDUM & ORDER**
                                                                               01-CV-5388 (DRH) (MLO)

                Plaintiff,

     v.

HOFSTRA UNIVERSITY SCHOOL
OF LAW

                Defendant.
---------------------------------------------------X
**A P P E A R A N C E S**

**DOUGLAS B. STEPHENS**
Plaintiff Pro Se
380 East 18th Street, Apt. 2W
Brooklyn, New York 11226

**CIANCIULLI & MENG, P.C.**
Attorneys for Defendant
773 Hempstead Turnpike, P.O. Box 246
Uniondale, New York 11553-0246
By: M. Kathryn Meng, Esq.


**HURLEY, District Judge:**


*INTRODUCTION*

        Plaintiff Douglas B. Stephens brought the present employment discrimination lawsuit against his former employer, Defendant Hofstra University School of Law ("Hofstra"). Stephens's complaint and first amended complaint were both dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), upon Hofstra's motions; presently before the Court is Stephens's second amended complaint, which Hofstra has similarly moved to dismiss. For the

reasons discussed below, Hofstra's motion is GRANTED IN PART and DENIED IN PART.

*BACKGROUND*

As indicated by the original complaint and documents attached thereto, Stephens is one of three black males who possess Master of Library Science ("MLS") degrees, had been employed as a part-time reference law librarians at Hofstra's School of Law, and were terminated in 1998. In August 1998 Hofstra announced that it planned to convert the three part-time librarian positions into one full-time position for which both MLS and Juris Doctor ("JD") degrees were required, and that it would not longer employ part-time librarians. On October 7, 1998 Hofstra gave Stephens "formal notification" of his pending termination, but informed him that he could continue on a month-to-month basis until the new full-time librarian was hired.

Stephens responded to the above notification by letter dated November 18, 1998. He alleged that the Director of the Law Library, in eliminating the part-time librarian positions, was "motivated by something other than the desire for a full-time librarian with a J.D. degree" and referred to his treatment as "reprehensible." The Provost of Hofstra, Herman A. Berliner, responded to Plaintiff's letter on December 14, 1998. Roughly twenty-two months later, in a letter dated October 25, 2000, Hofstra fully terminated Stephens's employment, effective November 30, 2000.

Stephens filed a charge with the Equal Employment Opportunity Commission (EEOC) on April 12, 2001 alleging that "my employer discharged me because of Race and

Color." On May 10, 2001, the EEOC informed Stephens that it was closing his file because it was unable to "establish that a violation has occurred," and advised Stephens of his right to sue in federal court. Stephens then initiated the instant action on August 9, 2001. On February 7, 2003, Hofstra moved to dismiss the complaint for failure to state a claim upon which relief may be granted. This Court granted the motion on July 31, 2003, after determining that Stephens had failed to timely file his EEOC charge regarding the discrete discriminatory actions of which he complained. However, Stephens was given leave to amend his Complaint to address certain "continuing violations" that he had suggested but not elaborated upon.

Stephens submitted an amended complaint on August 26, 2003. Hofstra moved to dismiss the amended complaint for failure to state a valid claim. On May 17, 2004, the Court granted Hofstra's motion, holding that the amended complaint merely "alleges a series of perceived inadequacies in both Hofstra's decision to hire only an MLS/JD librarian and . . . Hofstra's filing of the original motion to dismiss," and that it fails to adequately state a continuing violation of Title VII.

Although Stephens's amended complaint failed to state a valid claim, his memorandum in opposition to its dismissal made "cryptic mention" of various other alleged acts of discrimination, without specifying when they occurred. In light of these allegations and the "broad latitude" given to pro se litigants, this Court allowed Stephens one further opportunity to amend his complaint, provided that the second amended complaint meets a "minimal level of specificity," by "clearly stat[ing] those discriminatory acts that form the basis for his claims and when they occurred," with at least one sentence devoted to each

alleged discriminatory act.

Stephens subsequently submitted his second amended complaint, which states that it is brought pursuant to Title VII, as well as 42 U.S.C. § 1981 and "any related claims under New York law,"[1] and lists "[t]he discriminatory acts that form the basis for this claim" as follows: (1) "Dismissal from my Part-Time Reference Librarian position on November 30, 2000 after enduring twenty-two months of Defendants [sic] pattern of discriminatory practices, and continuous violation of my rights as enumerated in the First Amended Complaint"; (2) "The Library Director making disparaging statements about my qualifications to teach an Undergraduate pre-law introductory legal research class . . . in the Fall of 1997"; (3) "The alleged recommendations of a phantom "Library Task Force" as indicated in the letter to me from [the] Provost . . . dated December 14, 1998. No mention was made of the Task Force in the Library Director's letter of August 18, 1998. . . . I would like the opportunity to disclose [sic] the members and their 'Report' "; and (4) Hofstra's law library "never filled the hours covered by the three black male Librarians with anyone holding a JD and MLS from November 30, 2000 to at my last checking in 2002, [sic] but rather with male white clerks, and at one time with a law student, [and] still uses nonblack Librarians with only an MLS to cover some evening hours." This "only proves that the policy of [my supervisor], with the tacit

---

[1] Discrimination claims under the New York State Human Rights Law are analyzed under the same framework as Title VII claims, *Smith v. Xerox Corp.*, 196 F.3d 358, 363 n. 1 (2d Cir. 1999), but share the same three-year statute of limitations as Section 1981 claims. *See Forsyth v. Fed'n Employment and Guidance Serv.*, --- F.3d ----, 2005 WL 1324967 (2d Cir. 2005). This Court will accordingly not consider Stephens's "related claims under New York law" separately from his Section 1981 claims. *See* Discussion, Part III, *infra*.

approval of the University was to get rid of the blacks."

Hofstra now moves to dismiss Stephens's second amended complaint. Although Stephens has not submitted a memorandum in opposition to the motion, he has submitted an undated letter to the Court that: (1) alleges that defense counsel violated his due process rights by failing to forward certain documents or exhibits attached to Stephens's amended complaint to the Court; (2) argues that Hofstra's dismissal motions "are frivolous and repetitive"; (3) requests that the Court compel Hofstra to produce certain evidence purportedly at issue in this case; and (4) requests that defense counsel "be sanctioned sua sponte for violating my due process rights, and prejudicing the Court against me."

*DISCUSSION*

I.  *Dismissal:  Legal Standards*

Dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is appropriate only if it appears beyond doubt that a plaintiff can prove no set of facts that would entitle him to the relief he seeks. *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 79 (2d Cir. 2003). In considering a Rule 12(b)(6) motion, a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). The court must accept the factual allegations contained in the complaint as true, and view the pleadings in the light most favorable to the non-moving party, drawing all reasonable inferences in his favor. *Sheppard v. Beerman*, 18

F.3d 147, 150 (2d Cir. 1994).

Additionally, a court must construe pro se complaints like Stephens's even more liberally, applying a more flexible standard to evaluate their sufficiency than the standard used to review complaints submitted by attorneys. *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 140 (2d Cir. 2000). The above standards apply with particular force where the plaintiff alleges civil rights violations. *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation omitted).

A district court should not grant a motion to dismiss solely because the plaintiff fails to respond to it (or responds to it inadequately, for that matter). *See McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000). Although a plaintiff is entitled to submit papers in opposition to a Rule 12(b)(6) motion, he may also simply rely on his pleadings; where those pleadings are legally sufficient, his failure to respond to a Rule 12(b)(6) motion does not constitute a "default" justifying dismissal of the complaint. *See Maggette v. Dalsheim,* 709 F.2d 800, 802 (2d Cir. 1983), *and Smith v. Muccino*, 223 F. Supp.2d 396, 401 (D. Conn. 2002). (In light of the non-responsive character of Stephens's undated letter to this Court, summarized in the Background section, *supra*, he is deemed to be resting upon the pleadings in his complaint and second amended complaint.)

II. *The Allegations in Stephens's Complaints Are Untimely, and Fail To State a "Continuing Violation" under Title VII.*

Stephens's original complaint, as well as the submissions of Hofstra, and this Court's previous orders, all focused on Title VII of the Civil Rights Act of 1964. This statute makes it "unlawful for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Unlawful discriminatory practices under Title VII include the creation or maintenance of a "hostile work environment," *see Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65 (1986), subjecting an employee to unequal terms and conditions of employment, *see Vanhorne v. New York City Transit Auth.*, 273 F. Supp.2d 209, 216 (E.D.N.Y. 2003), and retaliating against an employee for his participation in a "protected activity." *See Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999).

Strict time limits govern the filing of Title VII discrimination claims. *See Baron v. Port Auth. of N.Y. & N.J.*, 968 F. Supp. 924, 926 (S.D.N.Y. 1997). Claims arising in New York must ordinarily be filed with the EEOC within 300 days of the date on which the "alleged unlawful employment practice occurred." *See Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 307 (2d Cir. 1996) (quoting 42 USC § 2000e-5(e)(1)). This exhaustion of administrative remedies procedure is a precondition to bringing the Title VII claim in federal court, and the time limits for undertaking it are functionally equivalent to a statute of limitations. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Failure to abide by the above time limitations, even by one day, generally bars a plaintiff from bringing a Title VII action in federal court. *See Fant v. Columbia Univ.*, No. 97 Civ. 7619, 1999 WL 232699, at *1

(S.D.N.Y. Apr. 21, 1999) (citations omitted).[2]  As discussed in this Court's previous orders, Title VII's limitation period for filing an employment discrimination charge with the EEOC generally begins to run when the plaintiff knows or should know of the employer's allegedly discriminatory decision at issue.  *Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992).  "The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Abramson v. Univ. of Haw.*, 594 F.2d 202, 209 (9th Cir. 1979), quoted in *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980).

Where a Title VII plaintiff alleges that his termination was discriminatory, the Supreme Court has made it clear that his limitations period for filing a charge with the EEOC runs from the date on which "the operative decision was made — and notice given," even when this date precedes the date of the plaintiff's actual termination.  *See Chardon v. Fernandez*, 454 U.S. 6, 8 (1981).  Thus, as discussed in this Court's previous orders, because Stephens was notified of Hofstra's final decision to terminate him no later than November 18, 1998, his April 12, 2001 EEOC charge was untimely, notwithstanding the fact that he continued to work for Hofstra on a month-to-month basis until November 30, 2000.

Stephens insists that this Court's previous orders are mistaken on this point; in particular, Stephens attempts to distinguish his case from *Delaware State College v. Ricks*, "because when Ricks was notified of his termination he was on a finite one-year contract,"

---

[2] That is, unless the defendant waives the requirement or is estopped to assert it, or the limitations period was equitably tolled.  *Id.*  None of these exceptions has been raised in the present case, and none appears to apply.

*Cf.* 449 U.S. 250, whereas "for twelve years I worked steadily without a signed contract, and Hofstra's intended nullification did not give me a definite termination decision until October 25, 2000." Stephens does not explain or cite any authority explaining why the distinction between his employment situation and the one in *Ricks* matters, and no such explanation or authority was found independently. Stephens also attempts to distinguish *Cauthorne v. Mutual Life Insurance Company of New York*, No. 96 Civ. 232, 1997 WL 154019 (S.D.N.Y. Apr. 1, 1997), because in that case "the plaintiff quit, so the 'time bar' issue is not on point." Stephens again does not explain, nor cite any authority explaining, why this distinction matters. In fact, it does not: constructive discharge (which was at issue in *Cauthorne*) "is the legal equivalent to actual termination," *Price v. Del. Dep't of Corr.*, 40 F. Supp.2d 544, 553 (D. Del. 1999), and is subject to the same 300-day limitations period. *See*, *e.g.*, *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004).

Under Title VII's continuing violation doctrine, by contrast, "if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) (internal quotation marks and citations omitted). However, the continuing violation doctrine is heavily disfavored in the Second Circuit. *See Falinski v. Kuntz*, 38 F. Supp.2d 250, 257 (S.D.N.Y. 1999) ("The courts of this Circuit have generally been loath to invoke the continuing violation doctrine and will apply it only upon a showing of 'compelling circumstances.' ") (internal citation omitted). The doctrine does not apply merely because a claimant continues to feel the effects of a single

time-barred discriminatory act. *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999). And the doctrine does not cover "discrete discriminatory acts" — which "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Instead, each discrete act "starts a new clock for filing charges alleging that act." *Id.* "Discrete acts" include failures to promote, denials of transfer, refusals to hire, and, most significantly, *terminations*. *Id.* As the Second Circuit has explained, "[t]he continuing violation exception applies to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists or discriminatory employment tests. However, multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993) (internal citations omitted). The rationale behind the "discrete act" rule is that when a plaintiff is harmed by a discrete act, he should be aware of it; "[t]o permit him to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed . . . would be to enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims." *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980).

The first three new allegations in Stephens's second amended complaint all refer to discrete events: his termination, which has already been shown to pre-date the limitations period; "[t]he Library Director making disparaging statements" about Stephens to a student, which occurred "in the Fall of 1997," and thus clearly precedes the statutory period as well; and what Stephens describes as the "alleged recommendations of a phantom 'Library Task

Force as indicated in the letter to me from Provost Herman A. Berliner dated December 14, 1998,' " which apparently refers to the process by which Hofstra decided to terminate Stephens, and is also clearly untimely. Stephens's fourth new allegation is that following his termination, Hofstra "never filled the hours covered by the three black male Librarians with anyone holding a JD and MLS . . . but rather with male white clerks, and at one time with a law student," and "still uses nonblack Librarians with only an MLS to cover some evening hours." While this allegation conceivably indicates that Stephens's termination was discriminatory (*see* Part III, *infra*), it does not in any way indicate an ongoing discriminatory policy. In sum, none of Stephens's new allegations indicate a "continuing violation" that can save his Title VII claims from the 300-day time bar.

III.  *Stephens Has Sufficiently Stated a Claim Under Section 1981 To Defeat Dismissal.*

Stephens's first and second amended complaints state that in addition to Title VII, they are brought pursuant to 42 U.S.C. § 1981. This additional basis for Stephens's claims was not addressed in this Court's previous order. The Court now finds that it precludes the dismissal of Stephens's case.

Section 1981 outlaws race-based discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment. *See, e.g., Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68-69 (2d Cir. 2000). "At will" employees are considered to have a sufficiently "contractual"

relationship with their employers to be covered by Section 1981. *See Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 261 (2d Cir. 2000).

Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to employment discrimination claims under Section 1981. *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). To establish a claim under Section 1981, a plaintiff must allege facts that if proven to be true would establish that: (1) the plaintiff is a member of a racial minority, (2) the defendant intended to discriminate against the plaintiff based on his race (3) in connection with one of the statute's enumerated activities, and (4) the discrimination was a substantial or motivating factor behind the defendant's actions. *See Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP*, 332 F. Supp.2d 592, 595-96 (S.D.N.Y. 2004) (citing *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000)); and *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001) (internal quotations omitted).

But claims brought under Section 1981 need not be asserted within the 300-day limitations period applicable to Title VII claims; the statute of limitations for Section 1981 claims brought in New York is three years. *See, e.g., Tadros v. Coleman*, 898 F.2d 10, 12 (2d Cir. 1990). Thus, federal civil rights plaintiffs attempting to extend the limitations period on their discrimination claims have been allowed to amend Title VII-based pleadings to include Section 1981claims as well. *See Okoampa-Ahoofe v. Johnson & Higgins*, No. 99 Civ. 5820, 2000 WL 1471552, at *2 (S.D.N.Y. Sept. 29, 2000). Since many of the discriminatory acts alleged by Stephens occurred within the period three years prior to the filing of this claim,

Section 1981 would seem to be a more conducive route to relief than Title VII — if Stephens's complaints suffice to state a claim upon which relief may be granted.

The parties do not dispute that Stephens is African-American, and thus a member of a racial minority, and that he enjoyed a contractual relationship with Hofstra as an at-will employee, which his termination ended. The critical question, then, is whether Stephens has sufficiently pleaded facts, which if proven to be true, would establish that Hofstra intentionally discriminated against Stephens because of his race, and that such discrimination substantially motivated the decision to terminate him. Discriminatory intent and causation are factual inquiries, and "an invidious discriminatory purpose may often be inferred from the totality of the relevant facts." *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001) (internal citations and quotations omitted). A plaintiff may generally offer events or actions subsequent to his termination as evidence of discrimination at an earlier point in time. *See Di Cola v. Swissre Holding (N. Am.), Inc.*, No. 90 Civ. 3211, 1992 WL 197403, at *5 (S.D.N.Y. Aug. 5, 1992) (citations omitted).

In the present case, although Hofstra apparently *told* Stephens that he was terminated in order to make room for a "full time legal reference librarian" with "both an M.L.S. and JD degree," Stephens has alleged that Hofstra in fact "still uses nonblack Librarians with only an MLS." In light of these allegations, and the generous standard with which his pro se civil rights complaint must be read at the dismissal stage (discussed in Part I, *supra*), the Court now finds that Stephens has sufficiently alleged facts indicating that Hofstra discriminated against him based on his race in violation of Section 1981. Dismissal of this

claim is thus inappropriate at the present juncture.

## *CONCLUSION*

For all of the above reasons, Defendant's motion to dismiss the second amended complaint is GRANTED IN PART, as to Plaintiff's Title VII claims, but DENIED IN PART, as to Plaintiff's Section 1981 and New York State claims.

**SO ORDERED.**

Dated: Central Islip, New York
June 24, 2005  /s/
Denis R. Hurley
United States District Judge